FARM BUREAU MUTUAL INSURANCE COMPANY of Missouri, Plaintiff-Appellant,

and

Roy Anderson, Administrator of the Estate of Bland Smallie, Deceased, Plaintiff,

v.

Kim BROADIE, Robert Broadie and Kathleen Broadie, and William Duane Smallie, Defendants-Respondents.

Doyen WILLIAMS, Mrs. Doyen Williams, Debra Williams and Martha Williams, Defendants and Third-Party Plaintiffs,

v.

MFA MUTUAL INSURANCE COMPANY, Third-Party Defendant-Respondent.

No. 10359.

Missouri Court of Appeals, Springfield District.

Aug. 25, 1977.

Modified of Court's Own Motion.

Motion for Rehearing or Transfer Denied Sept. 9, 1977.

Application to Transfer Denied Oct. 11, 1977.

752

V. Kenneth Rohrer, Roberts & Roberts, Farmington, for plaintiff-appellant.

Norman L. Chadwick, Friedewald & Chadwick, Poplar Bluff, for third-party defendant-respondent.

No appearance for defendants-respondents.

Before BILLINGS, C. J., and HOGAN and FLANIGAN, JJ.

HOGAN, Judge.

In this declaratory judgment action, plaintiff Farm Bureau Mutual Insurance Company sought an adjudication of its duties under the omnibus clause of an automobile policy issued to Bland Smallie. Plaintiff Smallie died while the action was pending, and plaintiff Roy Anderson, his personal representative, was substituted as a party plaintiff. Farm Bureau appeals from the trial court's finding and declaration that defendant William Duane Smallie was covered by Bland's policy as an "insured" on July 9, 1971.

During the summer of 1971, Duane Smallie was visiting his grandfather, Bland, on Bland's farm in Madison County. Bland owned a 1968 Chevrolet pickup, the vehicle insured by plaintiff Farm Bureau. Bland was teaching Duane to drive, even though Duane was only 15 years of age and, of course, had no driver's license. The substance of Bland's testimony, by pretrial deposition, was that he only allowed Duane to drive on the "back roads," so to speak, but he estimated that during the summer of 1971 and up to July 9, Duane had driven the pickup perhaps 100 miles, and there was some evidence suggesting that Duane may have occasionally used the pickup without Bland's permission.

In any event, Duane became acquainted with Kim Broadie, who was also visiting a grandparent in Madison County. Kim was 17 years of age and had a valid driver's license. On the day before the accident, Duane and Kim asked Bland if they could use the pickup to attend the movies. Bland gave his permission, but expressly stated that Kim, not Duane, was to drive. It is fairly inferable that Bland knew the boys were interested in two young ladies who lived in the neighborhood, Debra and Martha Williams, because the boys "stayed out . . . down there at Williams late at night . . . and they said they were down there."

Duane's testimony was that on July 9, 1971, he and Kim had asked Bland if they could use the truck to go "running around that night." Bland gave his permission, but said Kim was to drive. The two boys drove to the Williams girls' home, and asked if the girls might go with them. The girls' parents consented provided Kim drove. After Kim and Duane left the Williams home with the girls, Kim pulled over to the side of the road and asked Duane to drive. Duane obliged, and shortly thereafter the accident occurred.

■ As the appellant conceives this appeal, the dispositive issue framed by the pleadings and decided by the trial court is whether Duane had Bland's *express* permission to drive the pickup on July 9, 1971. The appellant cites *Murphy v. Carron*, 536 S.W.2d 30, 32 [1–3] (Mo. banc 1976), wherein Rule 73.01, V.A.M.R., was authoritatively construed, and argues that the judgment must be reversed because there is no substantial evidence to support it, and because the trial court erroneously applied the law. We have considered this argument; we are not inclined to agree with it as presented, but it is unnecessary to rule expressly upon the appellant's argument because it is not determinative on the merits. As we read the decision, *Murphy v. Carron*, supra, 536 S.W.2d at 32, did not reach nor repudiate the long-standing rule that a correct result

in a bench-tried case will not be disturbed on appeal merely because the trial court assigned an incomplete or erroneous reason for its judgment. *Edgar v. Fitzpatrick*, 377 S.W.2d 314, 318 [12] (Mo. banc 1964); *Producers Produce Co. v. Industrial Commission*, 365 Mo. 996, 1004, 291 S.W.2d 166, 170[1] (banc 1956). Put differently, this court's chief concern is the correctness of the result, not the route by which it was reached. *Helmkamp v. American Family Mut. Ins. Co.*, 407 S.W.2d 559, 566 [8] (Mo. App.1966).

Part IV(b) of the appellant's policy—the omnibus clause—reads as follows our (emphasis):

"Insured—includes the named insured, and as used [in connection with bodily injury and property damage liability], also means any person or organization legally responsible for the use of the automobile, provided the *actual use* is with permission of the named insured."

The focal issue on this appeal is *not* whether Duane had express or implied permission to operate the pickup, as the appellant seems to think; Kim, who had permission to use the vehicle, was in the pickup and was using it at the time of the accident. Our inquiry is whether in the peculiar circumstances the use being made of the vehicle when the casualty occurred was a permitted use.

On several occasions in the past few years, this court has had "second permittee" cases before it. In *Helmkamp v. American Family Mut. Ins. Co.*, supra, 407 S.W.2d 559, the court noted a line of authority typified by *Dodson v. Sisco*, 134 F.Supp. 313 (W.D. Ark.1955), allowing recovery when the original permittee, as *user* of the automobile, was riding in the car with the second permittee, or the second permittee (without the first permittee present) was otherwise serving some purpose for the first permittee, but rejected the contention that that line of authority was applicable to the facts. In *St. Paul Ins. Co. v. Carlyle*, 428 S.W.2d 753 (Mo.App.1968), the argument was again

made that the second permittee was serving a purpose for the initial permittee, but we rejected that argument. The court undertook no analysis of the case law; no consideration was given to the specific language of the omnibus clause.

In *Allstate Ins. Co. v. Hartford Accident & Indem. Co.,* 486 S.W.2d 38 (Mo.App.1972), the court meticulously surveyed the authorities dealing with second permittee cases, giving the language of various omnibus clauses more discriminating attention than it had previously received. The court concluded, among other things, that the varying language of particular omnibus clauses in use by casualty carriers accounted, in considerable measure, for the apparent contrariety of result in second permittee cases. We noted the restrictive evolution of "standard" omnibus clauses from those which extended coverage upon the "use" of the automobile to those which afford coverage only to a permittee whose "actual operation" is permitted by the named insured. *Allstate Ins. Co. v. Hartford Accident & Indem. Co.,* supra, 486 S.W.2d at 43–44 and nn. 6, 7. The court observed, 486 S.W.2d at 43–44 (citations omitted):

> [W]e return to the language of the omnibus clause in the *Hartford* policy . . . (the Hartford omnibus clause) which is said by Allstate to have afforded coverage for [the] second permittee . . under the following language, to wit, 'any other person using such automobile with the permission of the named insured, *provided his actual operation* or (if he is not operating) his other actual use *thereof is within the scope of such permission*' (an *actual operation* omnibus clause). The terms '*use*' and '*operation*' are not synonymous and in this setting are words of quite different meaning. 'For the "*use*" of an automobile by an individual involves its employment for some purpose or object of the user while its "*operation*" by him involves his direction and control of its mechanism as its driver for the purpose of propelling it as a vehicle.' Thus, as employed in an omnibus clause 'use' is a term of much broader scope and application than 'oper-

ate' or 'drive,' and conversely the latter terms are of narrower and more restricted meaning. Although one who operates an automobile obviously uses it, one can use an automobile without operating it. . . .

> The omnibus clause in some earlier policies extended coverage upon the *use*, rather than the *actual use*, of the automobile by the named insured or with his permission. However, it appears that for many years the then 'standard' omnibus clause extended coverage to 'any person while using the automobile . . . provided the *actual use* of the automobile is by the named insured or with his permission' (an *actual use* omnibus clause). . . . An omnibus clause in the hereinbefore-quoted language of the Hartford omnibus clause under consideration here, i. e., 'any other person using such automobile with the permission of the named insured, *provided his actual operation* or (if he is not operating) his other actual use *thereof is within the scope of such permission*' (an *actual operation* omnibus clause), first appeared as a 'standard' clause in the 'Text of January 1, 1963 Revised Standard Provisions' . . . and thereafter was carried forward in the 'Text of 1966 Standard Provisions.'

■ It follows that the omnibus clause under consideration on this appeal is an "actual use" omnibus clause; consequently, coverage obtains if the *use* being made of Bland's vehicle at the time of the accident was a use actually contemplated at the time of the original bailment.

■ There is no substantial doubt that the "use" to which the pickup was being put was a use actually contemplated by Bland and Kim at the time of the original bailment. Duane's request was not very definite; his testimony on trial was that he and Kim asked if they could go "running around" on the evening of July 9. However, Bland's testimony by deposition shows unmistakably that he knew such "running around" usually included a trip to the Williams house and perhaps a stop to get something to eat after seeing a movie. In fact the question put to the named insured concerning the scope of the permitted use was:

"Q. And the night of the wreck they had authority to take [the pickup] and go wherever they wanted to go with it? A. Yeah, I let the boy [Kim] have it." As we read the record, the accident happened a short time after Kim and Duane picked up the Williams girls and started their social evening. To reiterate, the "use" being made of the pickup was undoubtedly a permitted use.

The final consideration is whether Bland's express admonition that Duane was not to drive defeats coverage. There is evidence in the nature of a declaration or admission against interest indicating that Bland *did* give Duane permission to drive and further gave him directions to the Williams house. As noted, we think that evidence was admissible, but we do not base our holding upon that belief. We consider Bland's instruction not to let Duane drive wholly immaterial in this case.

As we have rather tediously developed in the course of the opinion, this court has three times examined the second permittee cases, but only recently has discriminated between the "actual use" and "actual operation" omnibus clauses. The "actual use" omnibus clause, found in the appellant's policy, extends coverage to a permitted use rather than a permitted operation. *Allstate Ins. Co. v. Hartford Accident & Indem. Co.*, supra, 486 S.W.2d at 43–44 [1, 2]. The act forbidden here related to the *operation* of the pickup, not to the *use* which might be made of it. It is our considered opinion that because the use had been permitted, it is immaterial how the vehicle was operated. We have held and continue to hold that insurance contracts will be construed strictly against the insurance carrier because such contracts are contracts of adhesion,[1] and, the insured having given his permission for a particular use, the appellant will not be heard to complain that the *operation* of the vehicle in performance of the permitted use was conducted in a way forbidden by the named insured. *Allstate Ins. Co. v. Nationwide Mut.*

Ins. Co., 273 A.2d 261, 263 [2] (Del.Super. 1970); *Strickland v. Georgia Cas. & Sur. Co.*, 224 Ga. 487, 162 S.E.2d 421, 424–425 [2] (1968); *Maryland Indemnity Ins. Co. v. Kornke*, 21 Md.App. 178, 319 A.2d 603, 612–614 [3] (1974); *Indemnity Ins. Co. v. Metropolitan Cas. Ins. Co. of N.Y.*, 33 N.J. 507, 166 A.2d 355, 358–359 [1], [2] (1960). See also *Arcara v. Moresse*, 258 N.Y. 211, 179 N.E. 389, 390 [1] (1932).

For the reasons indicated, the judgment is affirmed.

All concur.

---

1. *Surface v. Ranger Ins. Co.*, 526 S.W.2d 44, 47 [2] (Mo.App.1975), and see *Steven v. Fidelity & Cas. Co. of New York*, 58 Cal.2d 862, 27 Cal. Rptr. 172, 377 P.2d 284, 296–297 and nn. 10, 11 (bank 1962); Patterson, The Interpretation and Construction of Contracts, 64 Colum.L.Rev. 833, 855–859 (1964).