CAMERON MUTUAL INSURANCE
COMPANY, Plaintiff-Appellant,

v.

Ronda Kay BOWER, William L. Bower,
Defendants-Respondents,

William C. Trice, Administrator of the Estate of Scott Kendall Stella, Deceased, Carole Stella Anna Weyand, Glen Weyand and Auto-Owners (Mutual) Insurance Company, Lansing, Michigan, Defendants.

No. KCD 28345.

Missouri Court of Appeals,
Kansas City District.

Aug. 29, 1977.

Motion for Rehearing and/or Transfer
Denied Oct. 12, 1977.

Application to Transfer Denied
Nov. 14, 1977.

Scott O. Wright, Brown, Wright, Willbrand & Simon, Columbia, for plaintiff-appellant.

David A. Oliver, Oliver & Walker, Columbia, for defendants-respondents Bower.

Before SWOFFORD, P. J., PRITCHARD, C. J., and DIXON, J.

DIXON, Judge.

Plaintiff insurance company sought a declaration that second permittee was not insured under omnibus clause of policy. Trial court found coverage, and plaintiff appeals, raising issues that trial court's findings are not supported by the evidence and that the court erroneously applied the law concerning implied permissive use. Judgment affirmed. No appeal was perfected from the trial court's finding that the defendant Auto Owners (Mutual) Insurance Company had excess coverage under the nonowned automobile provisions of its policy.

A statement of the posture of the parties will aid in understanding of the facts, some stipulated by the parties and some from testimony of the parties and witnesses.

Scott Stella was the operator of a car, in which Ronda Bower and Don Kohl were passengers, which was driven off the end of the runway at the Columbia Municipal Airport. Stella was killed and the passengers injured. Ronda Bower, by her father and next friend, brought suit against the estate of Stella for her injuries.

The parties stipulated, "That on October 11, 1971, the defendants Glen Weyand and Anna Weyand were the owners and had title in them to a 1969 Ford Torino automobile. Although this car was jointly owned by these two defendants, the car was used almost exclusively by the defendant Glen Weyand. The defendant Glen Weyand was the minor son of the defendant, Anna Fern Weyand. On October 11, 1971, defendants Anna Fern Weyand and Glen Weyand had a policy of insurance with the plaintiff Cameron Mutual Insurance Company in which both Anna Fern Weyand and Glen Weyand were named insured.

. . . On the evening of October 11, 1971, the defendant Glen Weyand, Robert Akin and James Hendricks drove to the King's Food Host, which is located on Business Loop 70 in the City of Columbia, Missouri, across from Hickman High School in the 1969 Ford Torino owned by the defendants Glen Weyand and Anna Fern Weyand. Glen Weyand was driving the 1969 Ford Torino. Shortly after they arrived at King's Food Host, three girls that the boys knew . . . Ronda Bower, Mary Mountjoy and Dana Estill, drove into the same driveway and parked next to them. . . . , Glen Weyand had been dating Dana Estill some, and Robert Akin had been dating Mary Mountjoy some. These three girls were in a 1969 Dodge which was being driven by Ronda Bower but which belonged to her father. The meeting at King's Food Host between the three boys and three girls was not prearranged but both parties had felt they would run into each other at the drive-in. The three boys and three girls visited for a short time and for some reason or other, Glen Weyand and Ronda Bower decided to trade cars. In any event, there is no question but that each gave the other permission to drive their respective vehicles. The three girls drove directly from King's Food Host via Business Loop 70 to the old airport in Glen Weyand's car with Ronda Bower driving.

. . . Glen Weyand arrived at the airport about an hour after the exchange of cars, and when he got to the airport he learned that Glen Weyand's car had been driven off of the end of the runway. When the three girls got to the old airport in Glen Weyand's car, Scott Stella was working on a float in another hanger [sic] at the airport. Don Kohl, who was a good friend of Scott Stella, got into the Weyand automobile with Scott Stella and Ronda Bower. Kohl was sitting on the right-hand side and Ronda Bower was sitting in the middle and Scott Stella was driving. [There is no dispute that Stella was driving with permission of Ronda Bower].

. . . [W]hile Scott Stella was operating the 1969 Ford automobile occupied by Ronda Bower and Don Kohl the vehicle went off of the north end of the north-south runway at the old airport," causing the injuries upon which the underlying suit was brought.

The plaintiff's policy provision defining the insured which is critical to the issues reads in pertinent part:

". . . and also includes *any person while using the automobile* and any person or organization legally responsible for the use thereof, *provided the actual use of the automobile is* by the named insured or such spouse or *with the permission of either.*" (Emphasis added).

The evidence as to the circumstances surrounding the exchange of cars was conflicting. Bob Akin testified that he heard Glen give Ronda permission to drive to the airport. He did not hear the specific conversation between them. Dana Estill testified that Glen asked her if she had her driver's license, and when she replied she did not, he and Ronda exchanged keys to their cars. She did not hear their conversation about the trade and did not hear Glen give instructions other than that they were to meet at the airport. Mary Mountjoy also did not hear the exact conversation about the exchange of cars.

Glen Weyand's testimony was introduced by way of deposition. He testified that Ronda asked if she could drive his car to the airport, and he agreed as long as Dana accompanied her. He and his friends were to take her car to the airport in about one

hour after going to Hendricks' dormitory. He testified that he told her she must drive directly to the airport. As to the others driving the car, he testified as follows:

"Q. Was there anything said about anyone else driving your car except Ronda Bower that evening?

A. No.

Q. Did you give permission to anyone else to drive it but Ronda Bower?

A. No."

He later stated:

"Q. When you let Ronda Bower have your car that evening—you've said you permitted her to drive your car?

A. Right.

Q. —did you give her any instructions as to whether or not she should permit anyone else to drive that evening?

A. Yes, I told her not to let anyone else drive the car, including Dana Estill or anyone."

■ The plaintiff insurance company first challenges the trial court's finding that the conceded permissive use of the Weyand car was not limited. Upon this record, this issue is a factual one on conflicting evidence. This court reviews such an issue under Rule 73.01 as explicated in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). So considered, the record contains ample evidence to support the trial court's finding that no specific limitation on use by way of others driving was imposed by Weyand. This finding would, of course, depend on the trial court's findings of credibility to which this court defers.

■ Plaintiff's second point is that the trial court erred in not finding that Scott Stella was "operating" the vehicle without the "implied consent" of Weyand. Defendants counter by arguing that the issue is not the "actual operation" of car but its "use" under the specific policy language present in this case. The distinction between the "actual use" language and the wording of "actual operation" has been recognized in the case law. In *Allstate Insurance Co. v. Hartford Accident and Indemni-*

*ty Co.*, 486 S.W.2d 38, 42 (Mo.App.1972), the court set forth the distinction in the following language:

" 'For the "*use*" of an automobile by an individual involves its employment for some purpose or object of the user while its "*operation*" by him involves his direction and control of its mechanism as its driver for the purpose of propelling it as a vehicle.' Thus, as employed in an omnibus clause '*use*' is a term of much broader scope and application than 'operate' or 'drive,' and conversely the latter terms are of narrower and more restricted meaning. Although one who operates an automobile obviously uses it, one can use an automobile without operating it." (Citations and footnotes omitted).

Examination of the extensive citation of authority set forth in *Allstate, supra*, discloses that in the consideration of an omnibus clause using the terms "use" or "actual use," the focus is upon the scope of the first permittee's use of the vehicle while in those cases where the "actual operation" clauses are considered, the thrust is towards the scope of permission as it relates to operation.

The omnibus clause here in question in its operative language applied to those facts would then "include any person while using the automobile . . . providing the actual use . . . is with the permission of either" (named insured or spouse).

There can be no doubt Ronda Bower was "using" the automobile. The only evidence on this issue was that it was being used to locate Weyand and accomplish the trade back of the vehicles. Since the location for a re-exchange of cars was lacking in a specific time and place, i. e., the airport, the permission given by Ronda and Weyand to each other implied permission to drive the cars at the airport in order to locate one another to effect a second trade. She specifically said that the trip down the runway was a part of her search for Weyand and her car. She asserted that she thought they had seen him on the runway. If the trial court did not believe the testimony of Weyand that he specifically directed a limi-

tation on "use" by requiring that Ronda Bower's "use" terminate on her arrival at the airport, then her continued use at the airport was within the general permitted use of Weyand's car until her own car was returned. From what has been said, it is not necessary to reach or decide in this case whether or not the permission granted implied that Scott Stella or anyone be authorized to "operate" the car. What is involved here is the actual use and as the trial court noted, Ronda Bowers was in the car at the time, a fact the trial court found to be significant. Cases cited by the parties involving the evidence which would support an implication of permission to "operate" where the omnibus clause uses the language actual operation are inapposite.

Missouri cases cited which have "actual use" language in the omnibus clause and in which coverage was not found are *Nye v. James*, 373 S.W.2d 655 (Mo.App.1963); *MFA Mutual Insurance Co. v. Alexander*, 361 S.W.2d 171 (Mo.App.1962); *MFA Insurance Co. v. Lawson*, 336 S.W.2d 123 (Mo. App.1960); and *Haynes v. Linder*, 323 S.W.2d 505 (Mo.App.1959). An examination of the facts in these cases shows that in all but *Lawson* the original permissive user was not using the vehicle so that the inquiry necessarily required a finding that the original permission permitted an implication of authority in the first permittee to grant authority to another. As to *Lawson*, it is clearly a case that involved a deviant use.

The last point urged is that the court erred in the application of the law by finding Scott Stella was an insured under the omnibus clause. Cited in support is *Lawson*. As noted, *Lawson* is distinguishable because there was plainly a deviation from the permitted use. Here, the evidence was sufficient for the trial court to have found the operation of Weyand's car was within the permitted "actual use." So finding the trial court was then authorized under the language of this omnibus clause to find and declare that Scott Stella was "any person while using the automobile" providing the "actual use" is with the permission of the named insured. This is in accord with the great weight of authority in the United States where courts have considered the question of omnibus clauses using the wording "actual use" and where the original permittee is within the vehicle, and the vehicle is being used within the scope of the original permitted use. The authority is collected in Annot., 4 A.L.R.3d 10 (1965). Plaintiff recognizes this general rule but contends Missouri authority is to the contrary. Cited are *Lawson, supra*, and *Allstate v. Hartford, supra*. *Lawson*, as noted, is a case where the use was not within the permission. *Allstate v. Hartford* is a case in which the omnibus clause required that the "actual operation" be within the permission granted. Omnibus clauses are intended to extend coverage and under the general rules of the construction of insurance contracts, the trial court correctly applied the law. *Murphy v. Carron, supra*.

Judgment affirmed.

All concur.