Henry Earl WEATHERS et al., Appellants,

v.

ROYAL INDEMNITY CO., a corporation, Respondent.

No. 60600.

Supreme Court of Missouri, En Banc.

Feb. 13, 1979.

Rehearing Denied March 13, 1979.

---

2. The same rule applies to homicides committed after May 25, 1977. See MAI–CR 15.00 3.d.

Samuel A. Goldblatt, William R. Kirby, St. Louis, for appellants.

Ben Ely, Jr., Brent W. Baldwin, St. Louis, for respondent.

RENDLEN, Judge.

This equitable garnishment action was brought by Henry and Bernice Weathers against Royal Indemnity Company (Royal) to collect amounts due on their unsatisfied judgments for personal injuries obtained against Elliott Davis, Jr. (Davis). Plaintiffs' base their claims on a contract of insurance issued by defendant insuring an automobile owned by The Hertz Corporation (Hertz) and used in its rent-a-car business. The general question is whether Davis, as driver of the Hertz automobile "rented" to one Davis A. Walker, was an additional insured under the omnibus clause of the insurance policy issued by Royal on Hertz's fleet of rental vehicles. It will be seen that the omnibus clause extended liability coverage to any person "*using*" the insured vehicle provided the "*actual use*" was "with permission of the named insured," i. e. Hertz.

Judgment was entered for defendant in the garnishment action and plaintiffs appealed contending the trial court's findings lacked evidentiary support and that the court misapplied the law. The Missouri Court of Appeals, St. Louis District (now the Eastern District), affirmed, but in view of an apparent conflict between its opinion and that of the Springfield District (now the Southern District), in *Farm Bureau Mut. Ins. Co. v. Broadie,* 558 S.W.2d 751 (Mo.App.1977), transferred the cause under Rule 83.02 that we might reexamine the existing law. We decide the case as if it were here on original appeal. Mo.Const., art. V, § 10.

The underlying negligence action flowed from certain occurrences commencing December 30, 1971. On that day Walker rented an automobile from a Hertz rent-a-car office on the Washington University campus in St. Louis where he was a student. He executed a written rental agreement tendered by Hertz at the time he obtained the car and on the afternoon of January 1, 1972, drove it to the home of his close friend, Elliott Davis, Jr. The young men, then on semester break from their respective colleges, used the car for social purposes. The next day they decided to drive to a mutual friend's house and because Davis was more familiar with the way, Walker permitted him to drive while he, Walker, rode in the front seat. En route they collided with an automobile in which Henry Earl Weathers was a guest. Immediately after the collision Davis and Walker agreed to say that Walker had been the driver, apparently in the understanding that this was

necessary for insurance coverage. However, when a police officer arrived at the scene and questioned them, Davis admitted he had been driving.

Mr. and Mrs. Weathers sued Davis and Walker for damages occasioned by the accident and at the close of plaintiffs' case, judgment was entered in favor of Walker from which plaintiffs have appealed. Royal had provided Walker defense counsel subject to a reservation of rights. On the other hand, Royal refused Davis' demand that it provide his defense in that suit, and plaintiffs recovered judgments (now final) against Davis in the amount of $100,000 for Henry and $10,000 for Bernice Weathers. Plaintiffs thereafter commenced this garnishment proceeding.

We consider first the applicable statutory law. Section 303.190.2(2), RSMo 1969,[1] mandates the inclusion of an omnibus clause broadening coverage in every auto liability policy issued to comply with Missouri Safety Responsibility Law and requires that it protect not only the named insured but "any other person . . . *using* any such motor vehicle . . . with the express or implied permission of such named insured." (Emphasis ours.)[2] Such an omnibus clause, evidently designed to comply with the referenced statute was included in Royal's policy here, affording coverage for the named insured (Hertz) and for "any person while *using* [vis-a-vis *operating*] the automobile . . . provided the actual *use* [vis-a-vis *operation*] of the

automobile is . . . with the permission of the [named insured.]"[3] Critical to the issues under consideration, the omnibus clause speaks broadly to the *use* of the automobile, not narrowly to its *operation*. Any insurance contract providing less would be subject to challenge for non-compliance with § 303.190.

The manifestation of public policy found in the Motor Vehicle Safety Responsibility Law, particularly § 303.190.2(2), supports a liberal interpretation of automobile liability insurance omnibus clauses. In *Winterton v. Van Zandt*, 351 S.W.2d 696, 700–01 (Mo.1961), this Court noted,

> Chapter 303 . . . requires that policies issued under § 303.170 as proof of financial responsibility shall insure 'any other person, * * * using any such motor vehicle * * * with the express or implied permission of such named insured.' The provisions of that act are indicative of the public policy of this state to assure financial remuneration to the extent and under the conditions therein provided for damages sustained through the negligent operation of motor vehicles upon the public highways of this state not only by the owners of such automobiles but also all persons using them with the owners' permission, express or implied.

Additionally, Royal in recognition of the need to comply with statutes such as Missouri's Motor Vehicle Safety Responsibility

1. All statutory references are to RSMo 1969, unless otherwise indicated.

2. Section 303.190.2(2) provides: "Such owner's policy of liability insurance . . . (2) *Shall insure* the person named therein *and any other person,* as insured, *using* any such motor vehicle or motor vehicles with the express or implied permission of such named insured, against loss from the liability imposed by law for damages arising out of the ownership, maintenance or *use* of such motor vehicle or motor vehicles within the United States of America or the Dominion of Canada, subject to limits, exclusive of interest and costs, with respect to each such motor vehicle, as follows: ten thousand dollars because of bodily injury to or death of one person in any one accident and, subject to said limit for one person, twenty thousand dollars because of bodily injury to or

death of two or more persons in any one accident, and two thousand dollars because of injury to or destruction of property of others in any one accident." (Emphasis ours.)

3. The omnibus clause defining the term "insured" states in part: "(a) With respect to the insurance for bodily injury liability and for property damage liability the unqualified word 'insured' includes the named insured and, if the named insured is an individual, his spouse if a resident of the same household, and also includes any person while *using* the automobile and any person or organization legally responsible for the *use* thereof, provided the *actual use* of the automobile is by the named insured or such spouse or with the permission of either." (Emphasis ours.)

Act provided in "condition 9" of the policy of insurance issued on Hertz's fleet of rental cars,

> 9. Financial Responsibility Laws—Coverages A [Bodily Injury Liability] and B [Property Injury Liability]. When this policy is certified as proof of financial responsibility for the future under the provisions of the motor vehicle financial responsibility law of any state or province, such insurance . . . shall comply with the provisions of such law which shall be applicable with respect to any such liability . . . . .

In this connection the Court of Appeals has declared, "Omnibus coverage provisions are intended to extend, not restrict, coverage afforded and such intention is salutary." *Hauser v. Hill,* 510 S.W.2d 765, 768 (Mo. App.1974). Such extension is accomplished by enlarging the number and variety of insured classes. Missouri law favors a liberal construction of auto liability insurance policies and as stated in *Giokaris v. Kincaid,* 331 S.W.2d 633, 639 (Mo.1960), quoting *Varble v. Stanley,* 306 S.W.2d 662, 665 (Mo.App. 1957), "An insurance policy, being a contract designated to furnish protection, will, if reasonably possible, be construed so as to accomplish that object and not to defeat it." See also *Meyer Jewelry Co. v. General Ins. Co. of America,* 422 S.W.2d 617, 623 (Mo. 1968), wherein the court stated, "We follow a construction favorable to the insured wherever the language of a policy is susceptible of two meanings, one favorable to the insured, the other to the insurer." This principle of construction was more fully discussed in *Brugioni v. Maryland Casualty Co.,* 382 S.W.2d 707, 710–11 (Mo.1964) as follows: "[A]n insurance policy being a contract designed to furnish protection will, if reasonably possible, be interpreted so as to accomplish that object and not to defeat it, and, if terms of the contract are susceptible of two possible interpretations and there is room for construction, the provisions limiting or cutting down on the coverage of the policy, or avoiding liability therefor, will be construed most strongly against the insurer." In *Sibothan v. Neubert,* 168 S.W.2d 981, 984 (Mo.App.1943), the Court of Appeals, dealing with an automobile liability omnibus clause stated, "It is of course true that the 'additional insured' clause was written in the policy for the primary purpose of extending not limiting liability."

■ Mindful then that the omnibus clause meets the statutory mandate by extending coverage beyond the named insured (and resident spouse) to permittees *using* the motor vehicle with the insured's express or implied consent, we examine the *use* here involved and determine if it was permitted by the rental agreement and thus protected by Royal's policy.

It cannot be seriously questioned that Walker's rental of the car was for a broad, almost unfettered use. The due date for return of the car was left blank in the rental agreement, indicating an unlimited term,[4] with rentals based on a daily charge for the days the car was retained. There were no mileage restrictions and the first two hundred miles were free though a charge of eight cents per mile was made for travel thereafter. No limitations appear as to where the car could be driven except in Paragraph 8, which stated that proof of coverage and vehicle ownership were required before entering Canada and "coverage is void in Mexico." This is the rental agreement's only reference to an act, the commission of which would void liability insurance. Paragraph 8 further provides that because "coverage is void in Mexico," the "[c]ustomer must obtain Lessor's written authorization and purchase special insurance before entering Mexico."[5] The ve-

---

4. At another place in the rental agreement it is stated the rates "do not include gasoline" and in an adjacent rectangle these handwritten words and figures appear, "4 days $35." This may or may not indicate a limitation on the duration of the agreement. Notwithstanding these patent ambiguities if the term of the contract was only four days, the claim arose within that period.

5. While other acts or omissions violative of the agreement would permit the Lessor (Hertz) to repossess the automobile, it is only in connection with driving into Mexico that coverage is

hicle could be used for any lawful purpose of the customer limited by the provisions of Paragraph 6 that it should not be "used" (a) to carry persons or property for hire, (b) to propel or tow other vehicles or objects, or (c) for racing, tests or contests.[6] Nothing in the testimony, briefs or oral argument suggests these limitations on *use* were violated.

On the other hand, Paragraph 7 sets forth restrictions as to the "operation" or driving of the vehicle.

> 7. Vehicle shall NOT be *operated* by any person except Customer and the following Authorized Operators, each of whom must be duly qualified and licensed to drive and must have received Customer's advance permission:
>
> (a) persons of full age (21 years) who are members of the immediate family of Customer and permanently residing in Customer's household;
>
> (b) the employer, partner or an executive officer of Customer;

(c) a regular employee of Customer. Davis was *operating* the car with the permission of his friend Walker, the customer, but was not a member of the class of operators specified in subparagraphs (a), (b) or (c) above.

Recent cases[7] have distinguished between *using* or *actual use*[8] and *operation* of a vehicle. *Use* is said to involve its employment for some purpose or object of the user. *Operation* of the vehicle, on the other hand, is said to involve the driver's direction and control of its mechanism for the purpose of propelling it as a vehicle. As noted in *Allstate,* 486 S.W.2d at 43, "Although one who operates an automobile obviously uses it, one can use an automobile without operating it." In this context it is apparent that Walker, the customer, was *using* but not *operating* the vehicle, and Davis, at the wheel by permission from Walker, was both *operating* and *using* the vehicle at the time of the accident. In this case, presenting the question whether Davis (not Walker) is cov-

---

expressly voided. The rental agreement, paragraph 2, states *inter alia* that "Lessor reserves the right to repossess Vehicle at any time without demand at Customer's expense if Vehicle is used in violation of this Agreement." From this it may reasonably be argued that while Walker's having permitted Davis to drive the vehicle was violative of the rental agreement's paragraph 7, thereby triggering Hertz's right to repossess the vehicle under paragraph 2, if Hertz had intended such violation would void coverage, it could have expressly so stated but it did not. Though we do not regard this argument determinative, it supports the conclusion we hereinafter reach that by a liberal construction of the policy's omnibus clause favoring extension of coverage, it may not be said Davis' *use* of the vehicle was a non-permitted *use* under the language of the omnibus clause and rental agreement.

6. The text of Paragraph 6 is as follows:
   6. Vehicle shall NOT be *used*:
   (a) to carry persons or property for hire;
   (b) to propel or tow any vehicle, trailer or other object;
   (c) in any race, test or contest.
   If Vehicle is obtained from Lessor by fraud or misrepresentation or is obtained or used in furtherance of an illegal purpose, all use of Vehicle is WITHOUT LESSOR'S PERMISSION. (Emphasis added.)

7. *Farm Bureau Mut. Ins. Co. v. Broadie,* 558 S.W.2d 751 (Mo.App.1977), and *Cameron Mut. Ins. Co. v. Bower,* 558 S.W.2d 226 (Mo.App. 1977).

8. *Allstate Ins. Co. v. Hartford Accident & Indem. Co.,* 486 S.W.2d 38, 43–44 n. 5 (Mo.App. 1972), provides a pertinent discussion of the terms "use" and "actual use" in omnibus clauses: "Some courts have thought that any attempt 'to place different meanings on the two terms ['use' and 'actual use'] creates a distinction without a difference . . . .' *Metcalf v. Hartford Accident & Indemnity Co.,* . . . [176 Neb. 468] 126 N.W.2d [471] at 474(1). Accord: *Gronquist v. Transit Casualty Co.,* . . . [105 N.J.Super. 363] 252 A.2d at [232] 236. The more logical view supported by the weight of authority would seem to be that the words 'actual use' are employed to make it clear that the use made of the vehicle at the time of accident must have been 'one actually contemplated by the parties at the time of the original bailment. *Employers Mutual Casualty Co. v. Poe,* Miss., 191 So.2d 541, 545(1); *Melvin v. American Automobile Ins. Co.,* 232 Md. 476, 194 A.2d 269, 271; *Gulla v. Reynolds,* 151 Ohio St. 147, 85 N.E.2d 116, 120; 45 C.J.S. Insurance § 829, l. c. 902, and cases collated in note 50. But since neither 'use' nor 'actual use' is synonymous with, or has the limited and restricted meaning of, 'operate' or 'actual operation,' the distinction or difference in meaning, if any, between 'use' and 'actual use' is of no importance here." So too in the case at bar the distinction (if any) is immaterial.

ered by the omnibus clause, the *use* by Walker of the vehicle is not the compelling circumstance. Our concern is whether the *use* or *actual use* of the vehicle by Davis was with the permission of Hertz.

As noted above, there can be no serious argument that the use to which the rented automobile was being put was a purpose contemplated by the parties when executing the rental agreement and thus under the terms of the omnibus clause it must be said that the named insured permitted the actual use here involved. The final consideration is whether the provision of Paragraph 7 of the rental agreement, directing that only members of certain limited classes (not including Davis) might operate the car, defeats coverage. For reasons hereinafter discussed, we believe it does not.[9] The non-permitted act in Paragraph 7 relates to *operation* of the automobile not its *use*. The precise question presented here, had not been previously decided in reported Missouri cases until *Farm Bureau Mut. Ins. Co. v. Broadie, supra,* decided in 1977 by the Court of Appeals. The Court in *Broadie* identified the focal issue as whether the *use* of the vehicle, under an omnibus clause like that sub judice, extending coverage beyond the named insured to "any person . . . legally responsible for the use of the automobile, provided the *actual use* is with permission of the named insured," 558 S.W.2d at 753, protected a driver under controlling facts, essentially the same as ours. There a named insured permitted the use of his pickup truck for social purposes by a young man named Kim (first permittee), but expressly instructed Kim not to let his friend Duane drive. The two young men proceeded in the pickup on the agreed purpose of the evening and there, as here, the pickup truck was put to a use permitted at the time of the original bailment. During the

evening Kim asked Duane to drive and after he took the wheel an accident occurred. The Springfield Court considered whether the named insured's (owner's) admonition that Duane was not to drive frustrated coverage. Deciding it did not, the court states, 558 S.W.2d at 755,

> The act forbidden here related to the *operation* of the pickup, not to the *use* which might be made of it. It is our considered opinion that because the use had been permitted, it is immaterial how the vehicle was operated. . . . [T]he insured having given his permission for a particular use, the appellant will not be heard to complain that the *operation* of the vehicle in performance of the permitted use was conducted in a way forbidden by the named insured.

Authority for this position is found in *Maryland Indemnity Ins. Co. v. Kornke,* 21 Md.App. 178, 319 A.2d 603 (1974), where the court considered an omnibus clause identical to that before us and held that it afforded coverage to the "second permittee" under controlling facts substantially the same as those at bar. There the father, the named insured, gave his eighteen year old son broad permission to use his car, but added explicit direction not to allow anyone else to drive. Notwithstanding those instructions the son, as first permittee, allowed a friend to drive the car and while the second permittee was driving during a trip planned by the parties an accident occurred. As stated by the Maryland court, 319 A.2d at 606–07,

> The question for decision, therefore, is whether in these circumstances the use of the car continued, until the time of the accident, with the permission of Kronke, Sr. [the named insured] and the effect of the express prohibition, repeatedly com-

**9.** Appellant also urges reversal for reason that the policy of insurance issued by Royal for the Hertz Corporation shows on its face that the insured's occupation as "DRIVERLESS CAR RENTAL" and because neither Hertz as the named insured nor its employees will be the auto's operator during the time of its principal use as a rental vehicle, that the customer occupies the usual position of the named insured

during the period of bailment under the rental agreement and should be regarded as standing in the shoes of the named insured. Thus it is only the permission of the customer that should be required to bring a permittee such as Davis within the scope of the omnibus clause. While this argument might have merit, we do not decide the point in reaching our decision herein.

municated by father to son, against allowing anyone else to drive.

Noting that the original permittee, riding in the car, was still the custodian of the instrumentality confided to his keeping, and that the second permittee was subject to his immediate direction and control, the court concluded, *id.* at 611:

> in determining whether the operation is within the permission required by the omnibus clause 'one must examine the total facts,' and the facts of paramount significance respecting a clause for permitted use (as against permitted operation) do not pertain to the identity of the driver but to whether at the time of the accident the operation of the car was for a *purpose* germane to the permission granted, whether it was for the *convenience* of the named insured or the first permittee, and whether the latter was *present* in the car at the time of the accident.

The court also noted that this construction of permitted use under an omnibus clause is in accord with the general view of a number of cases deciding the issue of permitted use and with that stated in 7 Am.Jur.2d *Automobile Insurance* § 117 (1963):

> The 'general rule' that a permittee may not allow a third party to 'use' the named insured's car has generally been held not to preclude recovery under the omnibus clause where (1) *the original permittee is riding in the car with the second permittee at the time of the accident,* or (2) *the second permittee, in using the vehicle, is serving some purpose of the original permittee.* The courts generally reason that under such circumstances the second permittee is 'operating' the car for the 'use' of the first permittee and that such 'use' is within the coverage of the omnibus clause. While some courts apparently would limit this qualification of the general rule to situations where the named insured has not specifically forbidden driving by a third person, *it is more generally held that operation by a third person under such circumstances falls within the protection of the omnibus clause even*

*where such operation is specifically forbidden* by the named insured.

319 A.2d at 611–12 (emphasis in original). The court further observed that because the operation of the car by the second permittee was for a purpose germane to the permission by father to son it was, at the very least, a convenience for the first permittee and concluded that the violation of the father's prohibition as to operation did not preclude extension of omnibus coverage to the second permittee.

The Georgia Supreme Court in *Strickland v. Georgia Casualty & Surety Co.,* 224 Ga. 487, 162 S.E.2d 421 (1968), held that an "actual use" omnibus clause identical to that in the case at bar extended coverage to a second permittee if such permittee had permission (express or implied) of the named insured to use the vehicle for the general purpose to be served by the vehicle under the bailment and the clause did not require permission as to operation of the automobile. There the named insured had forbidden the second permittee to drive the vehicle and the first permittee, who was present in the car and had consented to the second permittee taking the wheel, knew of this prohibition. The court examined and rejected insurer's argument that the policy required permission of the named insured to *drive* as well as to *use* the vehicle for the purpose of the bailment. In so doing the court stated, 162 S.E.2d at 424,

> The policy, among other things, insures against obligations arising from the negligent or unlawful operation of the described vehicle. Under appellee's contention if the named insured permitted the use of the vehicle and at the same time prohibited its negligent or unlawful operation, it would defeat the very purpose of the policy. Therefore, the 'actual use' of the vehicle within the meaning of the policy cannot reasonably relate to the particular manner of its operation. At most it could relate only to whether or not permission to operate the vehicle had been given. And even this would have no application to the first permittee who had been given permission to use the vehicle

for a particular purpose since such authorization necessarily implies permission to operate the vehicle. Furthermore, the policy provides: 'The purposes for which the automobile is to be used are 'business and pleasure.' This indicates to us that the policy is concerned with the purpose to be served by the vehicle and not its operation. If the policy intended that 'actual use' included the operation of the vehicle, it could have stated so plainly.

In the case before us the car was being used by Walker and Davis in the purpose for which it had been rented. Walker did not by the mere act of turning the wheel over to his companion convert the automobile to a different use.

Our holding in this case is in accord with cases collected in Annotation, 4 ALR3d 10, § 12(b) (1965). Respondent urges a contrary view and refers to cases cited in § 12(a) of the above Annotation, arguing that the use of the car by Davis and his act of driving constituted a violation of the permitted use thrusting it beyond the scope of the omnibus protection. In support of its argument respondent points to the language of Paragraph 8 of the rental agreement wherein it is stated, "[p]ermission to use Vehicle is expressly limited by Lessor as provided in paragraph 6 and 7 hereof." This argument is not persuasive for several reasons. First, paragraph 6 speaks only to limitations of *use* not here involved. As discussed above, it is clear that Davis and Walker were using the vehicle within the purposes intended by the rental agreement and not within prohibited uses set forth in subparagraphs 6(a), (b) and (c). In addition, Paragraph 7 relates only to the "operation" of the vehicle, and as previously discussed the use of the car by Davis was within the express terms and purpose of the omnibus clause. His use continued to be a permitted use protected by the policy so long as the first permittee and customer under the rental agreement was riding in the car with him and enjoying the benefits of its use within the general purpose for which the car was originally rented.

In our review of this equitable action under Rule 73.01, we conclude the trial court, in reaching its decision denying coverage, erroneously applied the law. Accordingly, the judgment is reversed.

MORGAN, C. J., BARDGETT, J., and WELBORN, Special Judge, concur.

DONNELLY, J., dissents in separate dissenting opinion filed.

SEILER, J., and FINCH, Senior Judge, dissent and concur in separate dissenting opinion of Donnelly, J.

SIMEONE and WELLIVER, JJ., not participating because not members of the Court when cause was submitted.

DONNELLY, Judge, dissenting.

The judgment of the trial court was affirmed in the Eastern District of the Missouri Court of Appeals. I adopt, without quotation marks, a substantial portion of the opinion written there by Norwin D. Houser, Special Judge.

The determinative question here is whether Elliott Davis, Jr. was covered as an additional insured within the following definition of the term "insured" in the omnibus provision of the policy of liability insurance issued by Royal Indemnity Company to Hertz (the named insured):

"III. Definition of insured

(a) With respect to the insurance for bodily injury liability and for property damage liability the unqualified word 'insured' includes the named insured and, if the named insured is an individual, his spouse if a resident of the same household, and also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or such spouse or with the permission of either. * * * "

As applied to the case at hand that language translates as follows: The word "insured" includes any person while using the automobile, provided the actual use of the automobile is with the permission of Hertz.

The automobile was delivered to Walker under a printed rental agreement between Hertz and Walker, signed by the parties, providing, inter alia:

"7. *Vehicle shall NOT be operated by any person except Customer* and the following Authorized Operators, each of whom must be duly qualified and licensed to drive and must have received Customer's advance permission: (a) persons of full age (21 years) who are members of the immediate family of Customer and permanently residing in Customer's household; (b) the employer, partner or an executive officer of Customer; (c) a regular employee of Customer.

"8. Lessor provides coverage for persons using Vehicle *with the permission of Lessor* (*and not otherwise*) in accordance with the standard provisions of a Basic Automobile Liability Insurance Policy, against liability for bodily injury [stating limits] arising out of use of Vehicle. * * * *Permission to use Vehicle is expressly limited by Lessor as provided in paragraphs 6 and 7 hereof.* * * *. [Our emphasis.]

"10. No right of Lessor under this Agreement may be waived or modified except by a written instrument signed by the President or Vice President of Lessor or of Hertz System, Inc."

Contrary to appellants' contentions, there is substantial evidence to support the decision of the trial court; the judgment is not against the weight of the evidence, and the court did not erroneously apply the law.

Careful consideration of the facts in each particular case is required in determining whether there is coverage under an omnibus clause. This omnibus provision extends coverage to any person while using the automobile, provided the actual use of the automobile is with the permission of Hertz. The only evidence bearing on the question what use of the vehicle was "actually contemplated by the parties at the time of the

original bailment" is to be found in the printed agreement itself.

Paragraph 6 prohibits the use of the vehicle to carry persons for hire, or to propel or tow any vehicle, trailer or other object, or in any race, test or contest, or if the vehicle is obtained by fraud or misrepresentation, or is obtained or used in furtherance of any illegal purpose.

Paragraph 7 specifically limits *operation* of the vehicle to Customer Walker, members of his family over the age of 21, his employer, partner, or regular employee.

Paragraph 8 recites that Hertz provides coverage for persons using the vehicle with the permission of Hertz ("and not otherwise") and further recites that permission to use the vehicle is "expressly limited" as provided in paragraphs 6 and 7.

It is clear that Walker, the lessee from Hertz, was "using" but not operating the vehicle, and that Davis, at the wheel by permission from Walker, was both "operating" and "using" the vehicle at time of accident. In this case, involving the question whether Davis (not Walker) is covered by the omnibus clause, the use by Walker of the vehicle is not the compelling circumstance. Our concern is whether the actual use of the vehicle by Davis was with the permission of Hertz; i. e., whether Davis' use of the vehicle at the time of accident was "one actually contemplated by the parties at the time of the original bailment." *Allstate Ins. Co. v. Hartford Accident & Indem. Co.*, 486 S.W.2d 38, 44 (Mo.App. 1972). The statement of the question compels a negative answer. Both the insurer and the bailor had an interest in the use to which the vehicle would be put. Royal Indemnity Company, by insuring Hertz, evidently had confidence in Hertz as a risk, and in extending its assumption of risk under the omnibus clause to others the insurer had the right to restrict coverage to actual use by persons securing permission from Hertz, evidently having confidence that insured, Hertz, would only permit its vehicles to be placed in the possession and care of persons worthy of trust. The insured, Hertz, by entering into a contract of

bailment with Walker, evidently had sufficient confidence in Walker to entrust its automobile to him, but in closely restricting the classes of persons permitted to use or operate the vehicle, Hertz demonstrated its lack of confidence in any others using or operating the vehicle. Both insurer and bailor had a right, for their own protection, to circumscribe the extent of and limit the risk each of them was taking, and to place strict limitations on the classes of persons authorized to operate or use the vehicle in question. The coverage of the omnibus clause did not extend to second permittees such as Davis. Only first permittees of Hertz, such as Walker, were covered by the omnibus clause. The parties to the bailment (Hertz and Walker) did not contemplate the use or operation of the vehicle by persons other than Walker, members of Walker's family over 21 years of age, employers or partners of Walker, and Walker's regular employees. These designated classes of persons, upon receiving Walker's permission, *and no others,* were to be entrusted with Hertz' merchandise. In violation of these strictures, and exposing both insurer and bailor to unassumed risks, bailee Walker permitted Davis to use and operate the insured vehicle. Davis was not a person actually contemplated by the parties to the bailment as within the class of eligible users. By reason of the fact that he was operating the vehicle he was devoting it to a use not permitted by and in direct violation of the bailment agreement. Davis was not one of the classes of persons to whom Walker was authorized to grant permission to drive. Nor was Davis "using" or "actually using" the vehicle with the permission of Hertz, as required under the insurance policy to activate the omnibus clause.

This is not a situation in which the consent of the named insured to the operation of the automobile by the second permittee may be *implied* from the prior course of conduct of the parties, or from any of the other factors so thoroughly delineated in *Allstate Ins. Co. v. Hartford Accident & Indem. Co.,* supra, 486 S.W.2d l. c. 44–45. A typical example of implied permission from

the named insured arising out of a course of conduct is *United States Fidelity & Guaranty Co. v. Safeco Ins. Co. of America,* 522 S.W.2d 809 (Mo. banc 1975), which although it involved a factual situation not comparable to that existing in this case, laid down one general rule pertinent to the present inquiry, on the question whether a second permittee is covered under the usual omnibus clause, namely, that "[t]he permission [to drive the insured car] must come from the named insured, not simply from the first permittee." 522 S.W.2d l. c. 816. In the case here for review the permission did not come from Hertz, the named insured, but from Walker, the first permittee.

At the time of collision Walker and Davis were driving in the City of St. Louis, on the way to the home of one Shirley Townsend, a person with whom they had became acquainted while all three were attending the Upward Bound Program. Assuming that a benefit accrued to the first permittee from the operation of the vehicle on this trip, appellants are still faced with the uncontrovertible fact that the insurance policy contains no exception authorizing a Hertz customer to permit a third person to operate the vehicle where the customer is a passenger, or where the customer is benefited by the trip. This court may not amend, change or modify the terms of the contract of insurance to extend coverage to second permittees on the basis of real or fancied benefits to first permittees. No implication of authority in the second permittee is to be drawn from these facts, because the first permittee was specifically forbidden by the rental agreement from entrusting the driving to another. *Nationwide Mut. Ins. Co. v. State Farm Mut. Auto. Ins. Co.,* 209 F.Supp. 83, 86 (N.D.W.Va.1962). Davis' operation of the car was outside the use of the vehicle permitted to Walker by Hertz. The actual use was not "in conformity with that permitted by the named insured," and therefore coverage did not extend to Davis. *Prisuda v. General Casualty Co. of America,* 272 Wis. 41, 74 N.W.2d 777, 782[4] (1956). Davis was operating the car without express permission of Hertz, and without per-

mission arising by implication from Hertz' conduct, or from the circumstances. Walker's right to use the vehicle "ended with his turning over the wheel of the car" to Davis contrary to the express provisions of paragraph 7 of the lease agreement. *Helwig v. Esterly*, 205 Pa.Super. 185, 208 A.2d 10, 12 (1965), and cases cited l. c. 11, 12. And see *Johnson v. Aetna Casualty and Surety Co.*, 274 So.2d 769 (La.App.1973); *State Farm Mutual Auto. Ins. Co. v. Allstate Ins. Co.*, 255 S.C. 392, 179 S.E.2d 203 (1971); *Southern Farm Bureau Cas. Ins. Co. v. Hartford Accident & Indem. Co.*, 255 S.C. 427, 179 S.E.2d 454 (1971); *Selected Risk Ins. Co. v. Travelers Ins. Co.*, 287 A.2d 675 (Del.Super. 1972); *Allstate Ins. Co. v. Employer's Group Ins. Co.*, 18 Ohio Misc. 62, 246 N.E.2d 924 (1969).

I respectfully dissent.