FARMERS INSURANCE COMPANY, INC., Appellant,

v.

Joel C. RIDGWAY, Rodney W. Ridgway, Moberly Motors, Inc., William E. Johnson, Dorothy V. Johnson and Universal Underwriters Insurance Company, Respondents.

No. WD 30981.

Missouri Court of Appeals, Western District.

July 8, 1980.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 4, 1980.

Hamp Ford and Marvin E. Wright, Columbia, for appellant.

Rex V. Gump, Moberly, for respondents Ridgway.

David A. Oliver, Columbia, for respondent Johnson.

Before WASSERSTROM, C. J., Presiding, and KENNEDY and PRITCHARD, JJ.

KENNEDY, Judge.

This is a declaratory judgment case, the object of which is to determine whether a certain automobile insurance policy issued to Joel Ridgway by Farmers Insurance covered an automobile accident involving a non-owned automobile being driven at the time by Rodney Ridgway, son of the named insured, and another vehicle. The automobile driven by Rodney was owned by Moberly Motors and had been lent to Joel Ridgway, father of Rodney, for a weekend test drive. It was a 1975 Chrysler Cordoba which Joel contemplated purchasing as a family automobile.

The coverages claimed by respondents and sought to be avoided by Farmers Insurance were: Medical expenses incurred for Rodney for injuries received by him in the accident; damage to the Cordoba driven by Rodney and owned by Moberly Motors; and liability for bodily injuries and property damage sustained by the Johnsons, driver and occupants of the other car involved in the collision.

The policy issued by Farmers Insurance to Joel provided insurance coverage for the "named insured", (Joel Ridgway or his spouse) or a relative, arising out of the use of a non-owned automobile provided the "actual use" of the automobile was "with the permission of the owner".

The resolution of the case turns upon the meaning of the quoted phrases, "actual use"

of the automobile "with the permission of the owner". The respondents all affirm, and Farmers Insurance denies, that the "actual use" of the automobile by Rodney Ridgway at the time of the accident was "with the permission of the owner". The trial court agreed with respondents and entered a judgment declaring that the Farmers Insurance policy did provide the coverages claimed by the respondents. Farmers Insurance has appealed to this court, asking us to reverse the trial court's judgment and to determine that the policy in question did not provide coverage for the accident.

The facts, as to which there is really no disagreement, are as follows: On a Saturday in February, 1977, Joel went into the Moberly Motors place of business with an interest in purchasing a certain 1975 Chrysler Cordoba automobile. Salesman Wright allowed Joel to take the car home to keep it over the weekend. Joel had through the years purchased other motor vehicles from Moberly Motors and had taken two of them home for trial periods—one for as long as five days—before closing the purchases.

Joel drove the Cordoba from Moberly Motors in Moberly to his home in Cairo, a distance of seven miles. He picked up his daughter, his wife and Rodney and they returned to Moberly to shop for groceries. Rodney was allowed to drive the car back to Cairo, then five miles beyond Cairo to Jacksonville and back to Cairo. Joel said that Rodney had driven well on this trip.

Rodney, 16 years of age, did not have a driver's license but had a learner's permit. He had made application for a driver's license, but at least once had failed the driver's test. He had had a learner's permit for a couple of months. A learner's permit allows its possessor to drive an automobile upon the highways of the state, but only when accompanied by a licensed driver who is seated in the front passenger seat beside the learner. Sec. 302.130.1, RSMo 1978.

That evening Joel's son, Randy, drove the car and was gone from home for two or three hours.

On the next morning—Sunday morning—Joel yielded to Rodney's persistent entreaties to be permitted to drive the car and told him that he could drive it to Joel's father's house, a distance of two blocks in the town of Cairo. Rodney was instructed to get a package of cigarettes for Joel at his father's house. He was specifically told to drive the car "not any farther than that". Other testimony of Joel may be interpreted to have broadened the permission to allow driving within Cairo, a village with a population of 248.

Rodney drove the car to his grandfather's house, but upon leaving his grandfather's house he did not return home but drove west along Route Z Highway. The accident in question took place about one and a fourth miles west of the grandfather's house.

In turning the car over to Joel on Saturday afternoon, Mr. Wright had placed no restrictions upon its use. Joel testified, ". . . It was stated that, if my family likes the car we would buy it". No specific member of the family was mentioned. Salesman Wright knew about an older son of Joel's, Ricky, for the two of them had bought a pickup truck from Mr. Wright at an earlier time. Wright remembered that Mr. Ridgway "told me he wanted his wife to see it, and the family, to see if they approved of it".

It was the policy of Moberly Motors not to allow persons under the age of 18 to operate their motor vehicles, but this policy was not communicated to Joel. There was simply no discussion of who might or might not drive the automobile. Wright did not know that Joel had an unlicensed driver in his family. Had he been aware that it was Joel's intention to allow an unlicensed driver to operate the car, he said, he would have prohibited that.

We find that the evidence justifies the finding of the trial court that the Farmers Insurance policy issued to Joel Ridgway does provide coverage for the accident in question, and we therefore affirm the judgment of the trial court.

█ It is frequently said in the decisions that the question of the permission of

the owner of the car, a question which frequently arises both under the omnibus clause of the policy and under the non-owned car provisions thereof, is a factual determination. *United States Fidelity & G. Co. v. Safeco*, 522 S.W.2d 809, 812 (Mo.banc 1975); *Bourne v. Manley*, 435 S.W.2d 420, 429 (Mo.App.1968); *St. Paul Insurance v. Carlyle*, 428 S.W.2d 753, 755 (Mo.App.1968). We review the finding of the trial court like that of any other court-tried case, and affirm the trial court's judgment except in those cases where the standards of *Murphy v. Carron*, 536 S.W.2d 30 (Mo.banc 1976), require reversal.

█ Salesman Wright entrusted the subject Chrysler Cordoba into the care of Joel Ridgway to be taken and kept for the weekend. Mr. Ridgway was asked on the trial whether he had told Mr. Wright that he planned to use it as a family car if he liked it. Mr. Ridgway replied, "Yes, it was stated that if my family likes the car we would buy it."

In his deposition Mr. Ridgway said: "I am sure that I would have told him that I needed a family car . . . and there again, I wanted to take it home for my family to see it. You know, my kids and all of them. My wife. The whole family . . . I'm sure I discussed the fact that I wanted to take it home for my wife and family to look at." Asked whether the decision to buy the car hinged upon other family members besides himself and his wife, Mr. Ridgway answered: "Absolutely. Whether they all liked it or not."

When salesman Wright, in the light of this conversation with Mr. Ridgway, allowed Ridgway to take the car for a weekend test drive, there is little doubt that the driving of the car by other members of the Ridgway family was within the contemplation of salesman Wright and Mr. Ridgway. Farmers Insurance emphasizes in its brief that Ridgway wanted to "show" the automobile to his wife and family, that he wanted them to "see" it, or "look at" it, and did not say to salesman Wright that he wanted them to use it or to drive it. Mr. Wright, an experienced automobile sales-man, surely knew that the other members of the family would not limit themselves to a visual inspection of the car, but would want to test out its driving and riding qualities. If you take the "show" and "see" language literally, the other family members could not even ride in it. It is not difficult to find from this evidence at least an implied permission from Moberly Motors for other members of the Joel Ridgway family, known to Mr. Wright or unknown to him, to drive the Cordoba in question.

Farmers Insurance points out also that Mr. Wright did not know of any members of Joel Ridgway's family except his wife, and the older son, Ricky, who along with his father had earlier bought a pickup truck from Moberly Motors. On the other hand, Wright did not know that there were not other members of the family, and made no inquiry. It was evidently not a matter of importance to him. It is quite possible for him to have given permission for a class of drivers to drive the automobile, without knowing the identity of each member of the class. *U.S.F. & G. Co. v. Safeco, supra* at 813–814. As a matter of fact, Joel's household included, besides his wife and Rodney, two other sons, Ricky, then 20, and Randy, then 21, and a daughter, 19. All had driver's licenses except Rodney.

Two other factors are emphasized by Farmers Insurance. Even if other legally qualified drivers who were members of the Joel Ridgway family might have had Moberly Motors' permission to drive the car during the weekend, it argues that that permission did not extend to an *unlicensed driver*, whose operation of the car at the time of the accident was unlawful, and emphatically not where the unlicensed driver was driving the car at a place outside the boundaries of his father's permission. Neither factor, however, relieves Farmers Insurance of its obligation of coverage for this accident. When the *actual use* is permitted by the owner (Moberly Motors), the collision is not removed from the purview of the policy's coverage because its *operation* is by an unlicensed driver. The cases take note of the difference between the *use* of

an automobile and its *operation*. Whereas the operation of an automobile consists of driving it, its *use* is a much broader term. A car may be put to use without driving it, although driving or operating it is certainly a use of it. *Weathers v. Royal Indemnity Co.*, 577 S.W.2d 623 (Mo.banc 1979); *Aetna Life and Casualty Co. v. Western Fire Insurance Co.*, 570 S.W.2d 691 (Mo.App.1978); *Farm Bureau Mutual Ins. Co. v. Broadie*, 558 S.W.2d 751 (Mo.App.1977); *Strickland v. Georgia Casualty & Surety Co.*, 224 Ga. 487, 162 S.E.2d 421, 424 (Ga.1968). The *use* of this car, for which the trial court found permission by its owner, Moberly Motors, was its testing by Joel Ridgway and the members of his family. Normal and expected means of testing included driving. The use to which the car was being put at the time of the accident was therefore a use permitted by Moberly Motors.

The fact that its *operator*, Rodney, was not legally qualified to drive does not remove the *use* from the permission which had been granted by Moberly Motors. We do not see the unlicensed driver point directly ruled by any Missouri case, although other jurisdictions considered the question and have reached the conclusion we have reached. *Wood v. Kok*, 58 Wash.2d 12, 360 P.2d 576 (banc 1961); *Behringer v. State Farm Mut. Auto. Ins. Co.*, 275 Wis. 586, 82 N.W.2d 915 (1957). We think, too, that the principle is of a piece with the principle of *Weathers v. Royal Indemnity Co., supra* at 627–630, which held that coverage was provided by an omnibus clause which required that the "actual use" of a leased automobile be "with permission of the named insured". The automobile at the time of the accident was being driven by a person who had the permission of the lessee, but who was forbidden to operate the automobile by the terms of the rental contract between the owner and lessee. It seems there would be a weaker case for coverage where the owner had specifically forbidden the operation of an automobile by contract, as in *Weathers*, than where, as here, the operation of the automobile was forbidden by law.

The same case, *Weathers v. Royal Indemnity Co.*, and also *Farm Bureau Mutual Ins.*

*Co. v. Broadie, supra,* answer Farmers Insurance's argument that coverage is to be denied because Rodney was driving beyond the scope of the permission which his father had given him. The driving of the car at the place of the accident was beyond the permission of Joel Ridgway, but its use by a member of the family for the purpose of testing was not beyond the permission of Moberly Motors, the owner. It is to the owner's permission that one is to look, not to the permission of Joel Ridgway. *U.S.F. & G. Co. v. Safeco, supra* at 816.

While in both the *Weathers* case and the *Broadie* case, *supra,* the first permittee was riding in the car with the non-permissioned driver, we do not think that is essential in our case. In the *Weathers* case, the fact of the presence of the first permittee was emphasized by Judge Rendlen, but there the conveyance of the lessee of the car—the first permittee—was perceived as an essential part of the permitted use. The physical presence of Joel Ridgway in the car was not an essential part of the permitted use in the case before us, that of testing by members of the Joel Ridgway family.

██ Farmers Insurance advances another reason that its policy does not provide coverage for the property damage to the Cordoba, claimed by Moberly Motors against Joel Ridgway. Moberly Motors' claim is against Joel Ridgway for his personal negligence in allowing Rodney to drive the automobile, and is not against Rodney for his negligence in its operation. Farmers Insurance points to the language of the policy which excludes from its coverage "damage to property as to which the insured for any purpose is exercising physical control". It says that Joel was exercising physical control of the Cordoba at the time of the accident, and the exclusionary clause relieves it of coverage.

"Physical control" is immediate, possessory, physical control, as opposed to the right or authority to control. *Kirchner v. Hartford Accident & Indemnity Co.*, 440 S.W.2d 751, 755 (Mo.App.1969); *Falls Sheet Metal Works v. United States F. & G. Co.*, 17 Ohio App.2d 209, 245 N.E.2d 733, 736 (1969).

Joel was not exercising such control at the time of the accident. We need not decide if such control must be personally exercised or may be exercised through an agent. Although the courts of other states are divided on this point, *see Lindell v. Ruthford*, 598 P.2d 616 (Mont.1979), in Missouri physical control may be exercised by an agent. *Kirchner v. Hartford Accident & Indemnity Co., supra* at 755–6. But Rodney, when he passed the boundaries of his errand for his father, if he could be deemed to be his father's agent for the purpose of securing cigarettes for him, and when he struck off on an unauthorized trip of his own, was no longer his father's agent. *See* 8 Am.Jur.2d, Automobiles and Highway Traffic, § 584 (1963). The trial court was therefore justified in finding that Farmers Insurance was not excused from coverage by the exclusion quoted above.

The judgment is affirmed.

All concur.