Gordon LURTZ, an Infant, by and through his Mother and Next Friend, Louise Lurtz, Eugene Lurtz and Louise S. Lurtz, Plaintiffs–Appellants,

v.

Henry EHLERS et al., Defendants–Respondents,

American Family Mutual Insurance Company, Garnishee.

No. 41702.

Missouri Court of Appeals, Eastern District, Division One.

Nov. 18, 1980.

James F. Koester, Dave Baylard, St. Louis, for plaintiffs–appellants.

Richeson, Roberts, Wegmann, Gasaway, Stewart & Schneider, P. C., R. A. Wegmann, Hillsboro, for defendants–respondents.

STEWART, Presiding Judge.

This is a proceeding in garnishment in which the trial court entered judgment in favor of garnishee, American Family Mutual Insurance Company, and against plaintiffs, the judgment creditors of Robert Sellers. The plaintiffs claim that Sellers was covered under the omnibus clause of an insurance policy issued by garnishee.

On June 11, 1977, a 1976 Ford LTD titled in the name of Henry Ehlers, was involved in a one–car accident on Meramec Bottom Road in St. Louis County. Robert Sellers was driving the automobile at the time of the accident and passengers in the car included Vicky Ehlers (Henry Ehlers' daughter), Debbie, Gordon, Lisa and Kerry Lurtz. There was no real dispute that the accident resulted from gross negligence on the part of Sellers. Gordon Lurtz received serious injuries. Suit in two counts was filed against Henry Ehlers, Vicky Ehlers and Robert Sellers. The first count sought damages for injuries suffered by Gordon. The second count was a derivative action brought by Gordon's parents. Plaintiffs subsequently dismissed as to Henry Ehlers and Vicky Ehlers and judgments were entered against Robert Sellers. The single issue in this case is whether Robert Sellers was driving the car with permission of Henry Ehlers, the named insured, and thus afforded coverage under the omnibus clause of garnishee's policy of liability insurance.

In this court tried case our review is circumscribed by Rule 73.01(3). We will sustain the judgment of the trial court, "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. Appellate courts should exercise the power to set aside a decree or judgment on the ground that it is 'against the weight of the evidence' with caution and with a firm belief that the decree or judgment is wrong." *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc. 1976).

No findings of fact or conclusions of law were requested by the parties or made by the trial court. Under such circumstances all fact issues are to be deemed found in accordance with the results reached. The judgment is to be affirmed under any reasonable theory supported by the evidence. The Appellate Court is also obliged to accept as true the evidence and permissible inferences which may be drawn, favorable to the prevailing party and to disregard the contradictory testimony. *S. G. Adams Printing & Stationery Company v. Central Hardware Company*, 572 S.W.2d 625 (Mo. App.1978).

All of the evidence in this proceeding was introduced by plaintiffs. There was competent and substantial evidence of record to warrant a finding of the following facts.

Henry Ehlers was the record title holder of a 1976 Ford LTD. This vehicle was covered by a policy of insurance issued by garnishee. The policy of insurance contained the following provision which is common to most automobile liability policies:

"The following are insured under the liability coverage:

a. With respect to the owned automobile,

(1) the named insured,

(2) any other person using such automobile with the permission of the named insured, provided his operation or, if not operating, his actual use thereof is within the scope of said permission."

Vicky Ehlers, who was sixteen years of age, obtained her driver's license on April 21, 1977. She was attending school at that time. About three or four weeks later, she was permitted to drive the car for social engagements once or twice a week. Vicky was working at a swimming pool and was

allowed to drive the car to work. She did not have a set of keys to the car. There were two sets of keys to the car. Mr. Ehlers had one set and Mrs. Ehlers had the other. If she wished to use the car she had to obtain permission from her father or her mother. When Vicky was first given permission to drive the car Mr. Ehlers told her that she was not to let anyone else drive the car. The car was not provided for Vicky's exclusive use and she did not consider it to be her car.

In late April, Vicky started dating Robert Sellers, and let him drive the car on the five occasions that she had the car to go out socially. Mr. Ehlers did not know that Vicky had permitted Robert to drive the car on those occasions.

On June 11, 1977, Vicky obtained permission from her mother to use the car to go to work at the swimming pool. She had a late lunch period after which she went to the home of Debbie Lurtz. Debbie, her sisters and brothers were getting ready to go to the swimming pool and Vicky volunteered to take them. The Lurtz children got into the car. Before going to the swimming pool, Vicky drove to the home of Jay McCarty, Debbie's boy friend. Jay was not at home. As Vicky was backing out of the driveway Robert Sellers came up to the driver's side of the car and when he learned where they were going he opened the driver's door, said he was going to drive and told her to "scoot over." She told him to go to the passenger side if he was going with them. After what could be termed an argument he pushed in behind the steering wheel. They argued some more and then he jumped out of the car. As he did so, Vicky got behind the wheel and started to pull away. Robert came running back to the car, opened the door, pushed Vicky to the right and took control of the car. He drove off recklessly with Vicky and the other passengers yelling to him to stop the car. He drove on until he ran into an embankment and turned the car over.

There was evidence on behalf of plaintiffs in conflict with the above statement. Robert testified that Vicky "scooted over" to permit him to get behind the wheel and drive. He also testified that he had driven the car hundreds of times. Kerry Lurtz testified that Vicky asked Robert if he wanted to drive and he said "yeah."

Plaintiffs argue that the vehicle was being used for the purpose for which Vicky had obtained permission to use the car and that we should broaden the coverage as a matter of public policy. They cite as authority *Weathers v. Royal Indemnity Co.*, 577 S.W.2d 623 (Mo. banc 1979). They also contend that Robert was driving the car with the implied permission of Henry Ehlers. They reason that the course of conduct of Mr. Ehlers and Vicky evidences a willingness on the part of Mr. Ehlers to permit Vicky to authorize others to drive the car. In this they rely upon *United States Fidelity & Guaranty Co. v. Safeco Insurance Co. of America*, 522 S.W.2d 809 (Mo. banc 1975).

The cases relied upon have one common element that is essential to bring a case within their scope. The first permittee must authorize the operation of the vehicle by the third party who would be covered under the omnibus clause of the policy. In this case there was sufficient evidence from which the trial court could have found that Robert Sellers did not have express or implied permission of Vicky, the first permittee of the named insured, to operate the vehicle. There was sufficient evidence for the trial court to have found otherwise but resolving all fact issues in accordance with the result reached by that court we find that Robert Sellers did not have Vicky's permission to operate the vehicle at the time of the accident. *State Farm Mut. Auto. Ins. v. St. Louis Cty.*, 601 S.W.2d 291 (Mo.App.1980). It follows that Robert Sellers was not covered by the omnibus clause of garnishee's policy of insurance. A detailed discussion of *Weathers, supra,* and *United States Fidelity & Guaranty Co., supra,* would be academic.

The judgment of the trial court is affirmed.

SMITH and SNYDER, JJ., concur.