FARMERS INSURANCE COMPANY, INC., Appellant,

v.

Hal E. DAWSON, a minor, etc., et al., Respondents.

No. 42025.

Missouri Court of Appeals, Eastern District, Division Two.

Dec. 9, 1980.

Paul E. Fitzsimmons, Fitzsimmons & Fitzsimmons, Clayton, for appellant.

James E. Bowles, John W. Hammon, Hillsboro, Harvey B. Cox, Jr., St. Louis, for respondents.

WEIER, Judge.

Farmers Insurance Company, Inc., sought a declaratory judgment to determine coverage under a non-owned automobile clause in two separate policies of insurance. One policy was issued to Charles L. McCraw and the other to Helen L. McCraw. The circuit court found that both policies provided coverage. We reverse and direct the trial court to enter judgment for Farmers Insurance.

Bobbie Kapetanis is the daughter of Helen McCraw and the stepdaughter of Charles L. McCraw. On October 12, 1974, Bobbie Kapetanis was on a date with Tommy Edmonds. She had gone out with him a couple of times before. Edmonds picked up Bobbie in a 1968 white Buick which he had taken from his place of employment, the A & A Towing Service. A & A was operated by Michael Watson and William and Erma Watson. Edmonds worked in the salvage yard of A & A and did general mechanical work there. While on this date Edmonds allowed Bobbie to drive the 1968 Buick. An ensuing accident resulted in injuries and damages to respondents. There was no insurance covering the 1968 Buick.

The language of the non-owned automobile coverage clause is the same in both policies issued to Bobbie's mother and stepfather. The non-owned automobile clause provides coverage for:

"(1) the named insured or a relative, and...; provided the actual use of the non-owned automobile by the persons in (1) and (2) above is with the *permission of the owner.*" (Emphasis added.)

"Relative" is defined as follows:

"means a relative of the named insured who is a resident of the same household, provided neither such relative nor his spouse owns an automobile."

Our review of this court-tried case is governed by Rule 73.01. The judgment of the trial court will not be set aside unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law or erroneously applies the law. We defer to the trial court on matters of credibility. *Murphy v. Carron*, 536 S.W.2d 30 (Mo.banc 1976).

Appellant's first point on appeal is that there was insufficient evidence to support the conclusions that Tommy Edmonds had implied permission from Michael Watson, the party in possession of the 1968 Buick, to use the car and that Edmonds had authority to permit Bobbie Kapetanis to operate the car as a second permittee on October 12, 1974.

The issue with respect to Farmers coverage, therefore, is whether Bobbie was driving the 1968 Buick with "the permission of the owner." The word "owner" is not defined in the policy. *United States Fidelity & Guaranty Company v. Safeco Insurance Company*, 522 S.W.2d 809, 818 (Mo. banc 1975) discussed the term "owner" in the context of a non-owned automobile coverage clause. The court quoted with approval 73 C.J.S. Property § 13a, p. 181:

"Broadly, an 'owner' is one who has dominion over property which is the subject of ownership. Further, id. at p. 183: The term 'owner' may also be synonymous with 'holder' or 'possessor.' "

It also quoted Black's New Dictionary (Rev. 4th ed.):

" 'Owner' is not infrequently used to describe one who has dominion or control over a thing, the title to which is in another."

In the present case, the trial court found that Michael Watson had prepared the Buick for auction and had assumed the indicia of ownership even though he did not have record title. The record on appeal supports this finding. What is unclear from the record is whether Tommy Edmonds had implied permission to use the Buick on October 12, 1974, and whether Edmonds could transfer that permission, if present, to Bobbie Kapetanis.

The trial court found that Edmonds had implied permission for the following reasons: That prior to October 12, 1974, Tommy Edmonds had driven multiple other automobiles within the possession and control of Michael Watson; that Michael Watson and Tommy Edmonds were very close friends and shared a house trailer on the A & A lot; that all of the keys within the possession and control of A & A Towing were equally accessible to both Watson and Edmonds; and that Michael Watson failed to prosecute Edmonds for the theft of the Buick.

The record shows conflicting testimony from Michael, William and Erma Watson and Bobbie Kapetanis on the issue of Edmonds' implied permission.[1] The three Watsons testified that Edmonds did not have permission to use any car on the lot. Michael Watson also testified that when he discovered the missing Buick on the morning of October 13, 1974, he notified the sheriff's office that it had been stolen. Bobbie Kapetanis testified that she had seen Edmonds drive different cars around Festus, Missouri, and that she knew Edmonds worked for Watson who owned a car

lot. She further testified that Edmonds had taken her on several dates prior to the accident and he had driven several different cars. In addition, she stated she accompanied Edmonds on one occasion when he drove Michael Watson somewhere.

The trial court found that the three Watsons were not credible witnesses. Deferring to the trial court on the issue of witness credibility, the record supports the finding that Edmonds had implied permission to use the 1968 Buick on October 12, 1974. This finding, however, does not by itself support the additional finding that Edmonds as a first permittee had authority to grant permission to Bobbie Kapetanis.

The trial court relied on the *Safeco* case, *supra*, in formulating his conclusions of law. In *Safeco, supra*, Mrs. Dorothy Kloepper owned the automobile. Jane Kloepper, daughter of Mrs. Kloepper, was given permission by her mother to use the car. Mrs. Kloepper gave permission thinking that her daughter was going bowling with a friend. Later the girls picked up Roy Chapman who was driving the car when the accident occurred. The Supreme Court held that Chapman had the implied permission of Mrs. Kloepper to drive the car and thus was covered under the omnibus clause of Mrs. Kloepper's insurance. Mrs. Kloepper had given Jane instructions not to let others drive the car when she first started driving. But a year and a half later the daughter had unfettered control of the car to the extent the Supreme Court concluded Mrs. Kloepper gave her daughter implied permission to permit others to drive.

The non-owned automobile coverage clause in *Safeco, supra*, was different than the clause in the present case. In *Safeco* the non-owned clause provided coverage if the person "reasonably believed" he had the permission of the owner. The court concluded, on the basis of this clause, that actual express permission of the owner was not required. *Id.* at p. 817[4]. In the policy under consideration in this case, the non-owned clause requires the "permission of

---

1. There is no testimony from Edmonds. It is indicated he was deceased at time of trial.

the owner"; not a reasonable belief. Bobbie Kapetanis testified that she did not know who owned the 1968 Buick nor did she know whether Edmonds had permission of the owner to drive the Buick on October 12, 1974. Further, there is no testimony in the record that Edmonds allowed Bobbie to drive any of the other cars he used when they were together. Unlike the daughter in *Safeco, supra,* Edmonds did not have "broad, free and unfettered control" over the automobile most of the time. Further, there is no evidence in the record that Michael Watson pursued a course of conduct which showed his willingness to permit Edmonds as first permittee to authorize others to drive. We therefore conclude that there is insufficient evidence in the record to support the conclusion that Bobbie Kapetanis as a second permittee had the implied permission of Michael Watson to use the 1968 Buick on October 12, 1974. Any other conclusion would have to be the result of guesswork, conjecture or speculation and contrary to the standards set out in *Safeco* at p. 816.[2]

Having found merit in appellant's first point relied on, it is unnecessary to discuss appellant's second point on appeal. Respondents' motion to dismiss the appeal is denied.

We reverse the judgment and remand with instructions to enter judgment for appellant.

PUDLOWSKI, P. J., and GUNN, J., concur.

---

**2.** Missouri cases denying coverage to a second permittee are reviewed in this opinion at pp. 814–816. It was there noted that only one Missouri case before *Safeco* extended coverage.