STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,
Plaintiff-Respondent,

v.

James N. FOLEY, Administrator of the
Estate of Randall Wayne Blew, de-
ceased, Orville Blew, Nylene Marie
Blew, and Paula Marie Blew, Defend-
ants-Respondents.

Joseph Michael Hubeny, Gertrude Pauline
Hubeny, Michael Joseph Hubeny, Jo-
seph Michael Hubeny III, and Andrea
Marie Hubeny, Defendants-Appellants-
Respondents,

Cameron Mutual Insurance Company,
Intervenor-Appellant-Respondent.

No. WD 31836.

Missouri Court of Appeals,
Western District.

Sept. 15, 1981.

Per Curiam on Motion for Rehearing and
for Transfer to Supreme Court Over-
ruled and Denied Nov. 3, 1981.

James N. Foley, Macon, for defendants-respondents.

Russell E. Steele (argued), Edward R. Jayne, Kirksville, for defendants-appellants-respondents.

Hadley E. Grimm (argued), Collins & Grimm, Macon, for intervenor-appellant-respondent.

Frank Cottey (argued), Thomas R. Oswald, Oswald & Cottey, Kirksville, for plaintiff-respondent.

Before MANFORD, P. J., and DIXON and NUGENT, JJ.

NUGENT, Judge.

Two appeals follow a declaratory judgment action wherein the trial court determined the liability of two insurance companies under three insurance policies for personal injuries and property damage arising from an automobile accident. Joseph Michael Hubeny and four members of his family appeal the judgment in favor of State Farm Mutual Automobile Insurance Company. Cameron Mutual Insurance Company appeals the judgment against it and in favor of the Hubenys. We affirm the judgment in its entirety.

## I.

On April 10, 1976, a 1966 Chevrolet driven by Randall Wayne Blew (Randy) collided with a car driven by Joseph Michael Hubeny in La Plata, Macon County, Missouri. Randy died as a result of his injuries. Injured were Randy's sister Paula Blew, a passenger in the Chevrolet, and the five members of the Hubeny family. Because Randy did not own the Chevrolet, the primary issue in this case is whether the insurers were liable because Randy was driving the car with permission, either express or implied, of the named insured on the insurance policy or the true owner of the car. The trial court found no liability arising from a State Farm policy insuring the Chevrolet or from a Cameron Mutual policy issued to and naming as the insureds Orville and Nylene Blew, parents of Randy. On the other hand, the court determined that a Cameron Mutual policy insuring Randy's automobile and his use of any other automobile when he operated it with the owner's permission afforded Randy full coverage during this operation of the Chevrolet.

Although Michael Buck (Mike) had paid for the Chevrolet, Bobby D. Buck, his father, held title. The policy insuring the car was issued by State Farm to Bobby D. Buck; however, Mike paid the premiums. Mike used the car ninety percent of the time and paid for the gas and maintenance. Mr. Buck had given orders that Mike was not to let anyone else drive the car. Nonetheless, Mike testified that, despite his father's stern warnings, he had allowed Randy to drive this car in the past, including the day of the accident, but only when Mike was in the car with him. Other testimony indicated that Randy often drove the car while Mike was with him and once had driven it alone.

On the day of the accident Mike and Randy, good friends and fellow laborers for the Santa Fe Railroad, spent the day together running errands in the Chevrolet. Randy's car was not in operable condition. During the morning they bought a case of beer and drank some throughout the day. Later they went to a La Plata pool hall owned by Kenneth Parker. A disturbance ensued which resulted in Mr. Parker's closing the pool hall. At that point some conversation occurred between Mike and Randy about Randy's use of the Chevrolet, which was parked outside the pool hall with the keys left in it to allow the tape player to continue to play. Both Mike and Parker testified that Mike did not give Randy permission to drive it. Thereafter, Mike and Parker left to take a ride on Parker's motorcycle.

Paula Blew, driving the elder Blew's car, stopped near the pool hall. After a short conversation she and Randy left in the Chevrolet to ride around La Plata. During this ride Randy and Paula passed Mike and Parker. Mike testified that he tried to flag Randy down to stop him and to get him to return the car. Paula asserted, however, that the friends were merely greeting each other, Mike nodding to Randy and Randy waving back. Parker did not recall having seen the Chevrolet during the ride.

Paula Blew also testified that, after she and Randy passed Mike, Randy told her that he had to pick up Mike at the Freeze 'n' Snack. Randy drove the Chevrolet out of town onto the highway a short distance and made a brief stop. When he got back in the car, Randy said, "We're going to go pick Mike up now." He turned the car back toward town, heading in the direction of the drive-in and the town square near which the pool hall was located. The collision with the Hubeny car occurred on the highway about three blocks from the Freeze 'n' Snack.

On passing Randy and Paula Blew in the Chevrolet, Mike made no attempt to turn around and try to stop Randy. Mike and Parker returned to the pool hall for a few minutes and then moved on to the Freeze 'n' Snack, a local drive-in some three blocks away where young people gathered of a Saturday night. While at the drive-in, Mike learned of the collision between the Chevrolet and the Hubeny automobile.

Thereafter, State Farm filed its petition for declaratory judgment denying liability coverage to Randall Blew on the theory that Randy was not operating the Chevrolet with the permission of the named insured, Bobby D. Buck. Defendants were James N. Foley, Administrator of Randy's estate, Paula Blew, Orville and Nylene Blew and the Hubenys. Thereafter, Cameron Mutual was granted leave to intervene, denying liability on the same theory.

After a court-tried case the judge made the following findings as to the three policies:

*First*, State Farm in its standard individual policy agreed to insure any person using the Chevrolet with the permission of the named insured, Bobby Buck. The evidence was insufficient to establish that Mr. Buck gave either express or implied consent through his son Mike to Randy to use the car.

*Second*, the Cameron Mutual policy issued to Randy's parents, the Blews, also being a standard individual policy, likewise limited coverage to the named insureds.

*Third*, the Cameron Mutual policy issued to Randy afforded him full liability coverage while he was using any car with permission of its owner. Under *United States Fidelity & Guaranty Co. v. Safeco Insurance Company of America*, 522 S.W.2d 809 (Mo.1975), (hereinafter referred to as *Safeco*), Mike Buck "owned" the Chevrolet. Randy was using the car with Mike's "tacit permission" at the time of the collision, therefore, that policy afforded Randy full liability coverage.

## II.

The following appeals were filed:

1. The Hubenys allege error in the trial court's finding in regard to State Farm. They argue that under *Safeco, supra,* and the court's finding that Mike was the true owner of the car, the permission of Mr. Buck impliedly runs from him through Mike to Randy. Therefore, the court's judgment, according to the Hubenys, is wrong as a matter of law.

2. Cameron Mutual alleges error (a) in the trial court's admission of Paula's testimony concerning Randy's statements, such statements not being within any exception to the hearsay rule; (b) in the court's conclusion that Mike was the legal owner because title to the car was not in his name; and (c) in that no substantial evidence was adduced to show express or implied consent from Mr. Buck or Mike for Randy to operate the car. Therefore, Cameron Mutual contends, under the standard of review of *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. en banc 1976), that finding was against the weight of the evidence.

Our review of the case is governed by Rule 73.01 as construed by *Murphy v. Carron, supra.* We defer to the trial court on matters of credibility. *Farmers Ins. Co., Inc. v. Dawson,* 610 S.W.2d 372 (Mo.App. 1980).

### III.

The issue with respect to State Farm is whether Randy was driving the Chevrolet with the permission of the named insured, Bobby D. Buck. Mr. Buck's testimony was emphatic that his rule was that nobody was allowed to drive any Buck car but members of the Buck family. In his findings of fact the trial judge noted that Mr. Buck exerted "extreme domination of all family members" so that Mike, who at the time of the accident was nineteen years of age and working full-time, was "subservient to" his father. No one contends that Mr. Buck gave express permission to Randy.

The court in *Safeco, supra* at 816, held, however, that implied permission may be found to flow from the first permittee (Mike) of the named insured (Mr. Buck) to the second permittee (Randy) if the conduct of the named insured and the first permittee is such that the first permittee is granted "broad, free and unfettered control of the vehicle." The court set out the following test:

1. The permission must come from the named insured, not simply from the first permittee.

2. Permission of the named insured to the second permittee may be implied as well as express.

3. Permission may be proven by circumstantial evidence, but the circumstances must be such that the necessary fact may be inferred therefrom and must reasonably follow, so that the conclusion so reached is not the result of guesswork, conjecture or speculation.

4. Permission from the named insured can be found or implied from a course of conduct which evidences the willingness of the named insured to permit the first permittee to authorize others to drive, such as the broad and unrestricted use

given by the named insured to her daughter in this case.

Later cases agree that the question of permission of the named insured under the omnibus clause of a policy is a factual determination. *Farmers Insurance Co., Inc. v. Ridgway,* 602 S.W.2d 823, 825, 826 (Mo.App.1980). As the court in *Lurtz v. Ehlers,* 608 S.W.2d 147 (Mo.App.1980), noted at 149:

The cases relied upon have one common element that is essential to bring a case within their scope. The first permittee must authorize the operation of the vehicle by the third party who would be covered under the omnibus clause of the policy. In this case there was sufficient evidence from which the trial court could have found that Robert Sellers did not have express or implied permission of Vicky, the first permittee of the named insured, to operate the vehicle. There was sufficient evidence for the trial court to have found otherwise but resolving all fact issues in accordance with the result reached by that court we find that Robert Sellers did not have Vicky's permission to operate the vehicle at the time of the accident.

The trial court in the instant case found that the initial and subsequent conduct of Mr. Buck and Mike was such that even though Mike had almost sole use of the car, that use was limited by the restrictions and conduct of Mr. Buck. Our review of the record reveals sufficient evidence to support that conclusion. It follows that we must affirm the trial court's judgment that Randy was not covered by the omnibus clause of the State Farm policy.

### IV.

Unlike the State Farm policy, the language of the Cameron Mutual policy issued to Randy provides liability coverage to Randy during his use of an automobile other than his own if he is operating that automobile with the permission of the *owner.* The trial court found that under *Safeco, supra* at 817–18, Mike was the owner of the Chevrolet in that even though he did

not have legal title to the car he had authority to allow Randy to use it. The trial court then found that Mike knew that Randy was using the car and that use was with Mike's "tacit permission" when Mike "acquiesced" to that use minutes before the accident. In order to affirm that part of the judgment we must (1) determine whether Mike was the "owner" of the car, (2) define "tacit permission", and (3) ascertain from the record if any substantial admissible evidence supports the conclusion that Mike gave any permission to Randy to use the car.

The *Safeco* court, in addition to adopting that construction of the word "owner" most favorable to the insured (at 818), noted at 817 the following to be evidence of ownership:

> While Jane Kloepper was not the "owner" of the Dodge Dart in the sense of having a Missouri certificate of title in her name, she was the "owner" insofar as she had possession, control and dominion over the automobile most of the time and she was capable of transferring lawful possession of the automobile to Roy Chapman. Under the circumstances in the present case, for example, Roy Chapman could not be found guilty of tampering with the Dodge Dart in violation of Sec. 560.175, RSMo 1969 [now § 569.090 RSMo 1978], which prohibits persons driving, operating, using, or tampering with a motor vehicle without the permission of the owner thereof.

Additionally, unlike *Safeco*, where the parent holding legal title had purchased that automobile when the daughter was only thirteen years old, in the instant case Mike had purchased the car himself when he was old enough to drive it. We find that Mike was, indeed, the owner of the car and as such had the authority to allow others to use it.

The word "tacit" as defined by Webster's, means "implied or indicated but not actually expressed." Therefore, the trial court concluded that, when Mike made a waving motion to Randy as Mike and Parker passed the Chevrolet on their motorcycle and then continued riding in the opposite direction from the car, Mike implied his permission for Randy to continue to drive the car.[1]

■ In *Allstate Insurance Co. v. Hartford Accident and Indemnity Co.*, 486 S.W.2d 38 (Mo.App.1972), the court at 44–45 listed the following principles regarding the concept of implied permission:

> ... that one relying upon implied permission must prove it; that no implied permission arises merely because someone either uses or operates a motor vehicle without the knowledge of the named insured; that the permission contemplated by an omnibus clause is something more than mere sufferance or tolerance without taking steps to prevent, that term being used rather in the sense of leave, license or authority with the power to prevent; and that such permission, whether express or implied, must originate in the language or conduct of the named insured or someone having authority to bind him (or her) in that respect. Furthermore, we have been mindful that, although implied permission is not confined to affirmative action, it usually arises from a course of conduct of the parties over a period of time prior to the use in question; and that a course of conduct from which implied permission properly may be found is one "pursued, with knowledge of the facts, for such time and in such manner as to signify, and be compatible only with, an understanding consent amounting to a grant of the privilege involved."

A review of the records reveals that Mike and Randy were good friends, Mike had allowed Randy to drive the car several times when Mike was present, Randy had driven the car once alone, Mike left the

---

1. Mike's actions may not be construed as acts of express permission since Missouri courts hold that to be express, permission "must be of an affirmative character, directly and distinctly stated, clear and outspoken, and not merely implied or left to inference." *Truck Insurance Exchange v. Hunt*, 590 S.W.2d 425, 430 (Mo. App.1979); *Bourne v. Manley*, 435 S.W.2d 420, 426, 427 (Mo.App.1968).

keys in the car, and Mike made no attempt, according to his testimony, other than to wave to Randy "to flag him down". Under these facts we are unable to say that there is no substantial evidence to support the conclusion of the trial court that Randy was driving the Chevrolet with the implied permission of the owner.

Cameron Mutual also claims the trial court erred in allowing Paula to testify concerning statements Randy made to her before and during their ride in the Buck car. Specifically, Cameron Mutual objects to Paula's testimony that Randy suggested that they go for a ride, that Randy said he had to pick up Mike at the drive-in restaurant, and that Randy said, "We're going to pick up Mike now." Although the Hubenys offered the evidence to show a motive or a plan which they claim is an exception to the hearsay rule as well as for their nonhearsay value as tending to explain an ambiguous act, Cameron Mutual contends that such testimony is not within any of the exceptions to the hearsay rule.

In *Lewis v. Lowe & Campbell Athletic Goods Co.*, 247 S.W.2d 800 (Mo.1952), the issue before the court was whether a workmen's compensation award was based on competent and substantial evidence upon the whole record. The appellants objected to testimony by the deceased's wife concerning statements made to her by the deceased on a Saturday evening regarding the purpose of the trip he planned to take the following Sunday morning. The appellants sought to prove the trip was to go hunting; the respondents contended that it was a business trip. The court held at 804–05 that the applicable rule and supporting authorities are set forth in 6 Wigmore, Evidence, § 1725, at 79 (3rd ed. 1940):[2] Wigmore there comments

> that the existence of a *design or plan to do* a specific act is relevant to show that the act was probably done as planned. The design or plan, being thus in its turn a fact to be proved, may be evidenced

circumstantially by the person's conduct. But, as a condition of mind, the plan or design may also . . . be evidenced under the present [hearsay] exception by the *person's own statements* as to its existence.

> The only limitations as to the use of such statements (assuming the fact of the design to be relevant) are those suggested by the general principle of this Exception, namely the statements must be of a *present existing state of mind*, and must appear to have been made in a natural manner and not under circumstances of suspicion. (Emphasis added.)

In the instant case the statements made by Randy show a design or plan to drive the car with Mike's permission. They demonstrate Randy's existing state of mind during the ride. They were made to his sister "in a natural manner and not under circumstances of suspicion." In his findings of fact and conclusions of law, the trial judge does not indicate that he relied on Paula's testimony in finding that Randy had Mike's "tacit" permission to drive the Chevrolet. He was, nevertheless, entitled to do so.

For the foregoing reasons, the judgment of the trial court is affirmed.

All concur.

## ON MOTION FOR REHEARING

### PER CURIAM.

In its suggestions in support of its motion for rehearing, or, in the alternative to transfer to the Supreme Court of Missouri, Cameron Mutual criticizes the opinion of this court for failing to address the finding of fact of the trial court that "Mike Buck had expressly denied Randy permission to use the 1966 Chevrolet." As a matter of fact, the trial court made the following finding:

> Michael Buck further testified that earlier in the day of April 10, 1976, he had allowed Randall Wayne Blew to operate

---

2. This quotation appears to be identical to 6 Wigmore, Evidence § 1725 (Chadbourn rev. 1976).

the 1966 Chevrolet but that just prior to Michael Buck's leaving on the motorcycle with Kenny Parker, there was a conversation between Blew and Buck concerning Blew's use of the 1966 Chevrolet. Michael Buck's testimony was that he refused Blew use of the vehicle. Kenny Parker testified that he heard Randy say he was going to take the car and ride around and that Michael Buck responded that he didn't think he'd better because he'd wreck it.

Of particular note in consideration of the evidence was the Court's opportunity to observe the various witnesses. Testimony given is that Bobby D. Buck, father of Michael Buck, and holder of the certificate of title and insurance policy on the 1966 Chevrolet in question is a strong-willed and opinionated person exerting extreme domination of all family members. Though Michael was 19 years of age and working full-time, he lived at home and was still living at home at the time of trial. Michael was at the time of the accident and at the time of the trial subservient to and dominated by his father. His father insisted on holding legal titles to all automobiles owned and operated by various family members. Michael's testimony which supported that of his father with regard to the family rule of not allowing auto- [sic] to be operated by non-family members, is tainted with the obvious influence and overbearance of the father. Michael's testimony regarding the use of the 1966 Chevrolet by Randy Blew is not altogether believable in that Michael was present during his father's testimony and his father present during the testimony of Michael. The father's presence and dominance of his son exerted some influence over the son during his testimony which was noted by the Court.

We stated in our opinion that "[b]oth Mike and Parker testified that Mike did not give Randy permission to drive [the Chevrolet]." We earlier noted that "Mr. Buck had given orders that Mike was not to let anyone else drive the car", and that these warnings were "stern". Although we may have understated the extent of Mr. Buck's power and dominance as noted by the trial court, we did not misstate its findings of fact. The trial court found that Mike Buck had *testified* that he denied Randy permission to use the car, *but that court did not find his testimony to be believable.* We defer to the trial court and its opportunity to judge the credibility of the witnesses. "The trial court, when sitting as the trier of fact, may believe all, part or none of the testimony of any witness." *Trenton Trust Co. v. Western Surety Co.,* 599 S.W.2d 481 (Mo. en banc 1980).

Cameron Mutual further complains that the opinion of this court broadly expands the concept of implied permission as defined by previous Missouri decisions. We based our affirmation of the trial court's judgment on the full definition of implied permission as found in *Allstate Insurance Co. v. Hartford Accident & Indemnity Co.,* 486 S.W.2d 38 (Mo.App.1972), where that court held that implied permission may arise from the course of conduct of the parties. Applying the *Allstate* principles to the instant case, we found substantial evidence to support the judgment of the trial court that Randy had Mike's "tacit" permission to drive the Chevrolet.

Cameron Mutual contends again that the statements Randy made to Paula, his sister, were inadmissible under any exception to the hearsay rule. In addition to the fact that we would find the statements admissible as an exception, and the fact that the trial judge did not rely on Paula's statements, we would remind Cameron Mutual that in a court-tried case it is "practically impossible to predicate reversible error on the erroneous admission of evidence." *Gould v. Starr,* 558 S.W.2d 755, 769 (Mo. App.1977). Cameron Mutual failed in its burden to demonstrate that, absent these statements, there was no substantial evidence to support the trial judge's decision. *In re Adoption of S.,* 581 S.W.2d 113, 118 (Mo.App.1979).

Cameron Mutual criticizes this court for "ignoring" *Emcasco Insurance Co. v. Don-*

*nelly,* 607 S.W.2d 460 (Mo.App.1980), where that court found that the trial court had not abused its discretion in not admitting statements relating to one side of a telephone conversation overheard by decedent's mother. That court noted that there was no other evidence that the said telephone conversation had taken place, the mother was not a party to the conversation, earlier testimony in the trial would not have been impeached by the admission of this evidence and there was no evidence as to the identity of the other party to the conversation if it did, in fact, take place. *Id.* at 462, 463. We do not find *Emcasco, supra,* to be factually analogous to the instant case.

The motion for rehearing is overruled and the motion to transfer is denied.